Jay J. Kiiha
WHITE PETERSON GIGRAY & NICHOLS, P.A.
5700 East Franklin Road, Suite 200
Nampa, Idaho  83687-7901
Telephone:     (208) 466-9272
Facsimile:     (208) 466-4405
ISB No.:       6763
*jkiiha@whitepeterson.com*

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **CASE NO. CR18-281-S-EJL** |
| | ) | |
| Plaintiff, | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| vs. | ) | |
| | ) | |
| CHANTELLE CHARNE ROBBERTSE, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

*Introduction*

Chantelle Robbertse, the defendant, is a twenty-four year old young woman.  She is enrolled in the honors program at Boise State University and is completing the first part of her junior year at the same.  She is the adoptive mother of a three year old, Olivia, and also cares for her mother's adoptive daughter, Navaeh, age six.  Chantelle is a permanent resident of the United States, but is essentially a *de facto* American citizen having left South Africa at age three. She has no criminal history, no history of substance abuse and this is a unique and aberrant act in an otherwise exemplary life.

SENTENCING MEMORANDUM - 1

Chantelle pled guilty to one count of Aggravated Identity Theft, 18 USC § 1028 A and 2. The minimum and maximum penalty for this crime is two years. The defendant has attempted to provide substantial assistance and cooperation since her arrest, but it is anticipated that the government will not file a motion to reduce this sentence based on her not having information of value to give that leads to a government motion to depart from the penalty.

Like many young people who are the sons and daughters of immigrants to the United States, including counsel, Chantelle has grown up in between both worlds, having one foot in the South African immigrant community growing up with some of the traditions from that world[1] and with one foot in the United States, being a product of its media, educational systems and learning to speak English without an accent and with the fluency of a native. Also, like many people who are raised in this matter, Chantelle has never returned to South Africa since her family left and some of the stories relating to that world, particularly with her mother Gloudina, have crossed the line from lived experience into heroic legend. For instance, Chantelle's grandfather, her mother's father, was a cleric who was cruelly murdered as a result of racial tensions existing prior to the time of her birth. Chantelle has seen firsthand the damage the way that the crime rent her family's psyche and has grown up understanding how her mother overcame this in such a way as to lead her and her brothers and sisters to the safety of the United States. Chantelle has heard stories about her mother overcoming cancer and later watched her mother struggle with liver disease, overbearing and cruel employers, near homelessness after relative security, and all of the things and prejudices that immigrants are sometimes subject to, not just in America, but all over the world. She watched her mother establish and run various

---

[1] Some of the discovery contains rather quaint accounts of charity bake sales that her and her mother would conduct from time to time selling South African pastries such as "koeksisters," as sort of a donut variant.

SENTENCING MEMORANDUM - 2

business and achieve a certain amount of success with the same.[2] She also relied heavily on her mother when she divorced and is raising her child and her mother's child together.

Chantelle's mother is a strong personality, probably as the result of necessity growing up in a torn land, and the family's matriarchal family head. Chantelle has worked for her mother and in other jobs, primarily service jobs, since she was young. To the extent that she worked for her mother, she made withdrawals at various ATM machines on behalf of her mother in this case. Credit cards relating to the victims in this case were found when her home was searched. She only came to have limited knowledge of this information near the end of Agent Cross's investigation. Her mother previously stated that "[Chantelle] would sail on her stomach like a snake if I request that." See Presentence Report, ¶ 12. During the Presentence Report Interview, she expressed guilt to USPO Nate Hudson that, had she not been partially responsible for the death of her mother's dog, Stanley, that her mother would not have committed the crimes at issue.[3] She has personally expressed guilt to counsel that even though, when she finally started realizing what her mother was up to, that she could not turn her mother into the authorities or dissuade her from committing further crimes. She feels tremendous guilt that she may have to be away from her daughter while she serves her sentence. Even though there are no legal mechanisms to get her there short of a government motion, she wants to ask the Court to not be able to start serving her sentence until she finishes school in eighteen months or to serve it in terms of community confinement. She knows that she will likely be deported at the conclusion of this case and has seen all of her family's American dreams, which were so close, irrevocably broken.

---

[2] It is not material whether these businesses were legitimate or fraudulent. What Chantelle perceived, and indeed came to know as a young person, was that her mother was an extremely successful businessperson.
[3] This is a rather strange explanation, but serves as an example of how much power Gloudina exercised over her daughter in terms of inducing her to feel responsible for acts which ultimately were not hers.

SENTENCING MEMORANDUM - 3

In an attempt to understand some of the why's behind this case, counsel thought it prudent to obtain a psychological analysis of Chantelle. Absolutely nothing was abnormal except for some anxiety relating to her future. Nearly half a million dollars was lost by the State of California in this case. Chantelle never saw much, if any, benefit from this that was not indirect. She never knew where all the money that was being "pulled" went. It is a mystery to her. As a young person, she is only partially familiar with most of the victims who are largely connected to her mother's generation or her mother's business. She is also likely too young to truly understand the violation that must have been felt by the people whose identifications were used in a fraudulent scheme that went on for a long time. And yet, in spite of all this, Chantelle acknowledges that she <u>was</u> there for a lot of it and that the train had been rolling for so long that, when she came to know, she could not stop it. It takes a lot of courage to realize that one's heroes, in this case her mother, are all too human and all too flawed. At twenty-four Chantelle has come to learn this lesson hard and counsel suspects this will be an ongoing struggle for her for a long, long time.

Chantelle is ready to face what may come to her and of the consequence of a young life interrupted. She wants the Court to know, however, that despite what happened here, she would have contributed many wonderful things to society and will set the rest of her life on that path once she is done walking this road.

*Sentencing*

Violating the Aggravated Identity Theft statute carries a min/max penalty of two years. 18 USC § 3553(a) states:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> […]
>
> **(5)** any pertinent policy statement--
> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

It is not anticipated that the United States will file a 5k 1.1 motion in this case allowing the Court to invoke its limited authority to reduce the sentence under 18 USC § 3553(e) beneath a statutory minimum. This is a max/min sentence. In generously agreeing to dismiss the wire fraud charges, the United States in a sense has already acknowledged her minor role in this scheme. She is also facing a concurrent sentence in the State of California for which she will serve no time in a California State Prison. If for some reason, the United States changes its

mind, the defendant is prepared to argue all of the sentencing factors and how they relate to her case at hearing.

*Conclusion*

As stated above, Ms. Robbertse really wants the Court to sentence her to something that is as close as possible to the life of the typical American college student that she currently leads. She realizes this may not be possible, but wants the Court to know that she acknowledges her guilt and like so many people, would go back and change it all if she could. Her American dream is more than likely lost, but she wants the Court to know that she will try to pick up the pieces every day from this point forward to building a better life for herself and for her family, wherever that road takes her.

DATED this 4th day of June, 2019.

WHITE PETERSON

/s/ Jay Juhani Kiiha
Jay Juhani Kiiha
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2019, I caused to be served a true and correct copy of the foregoing document by the method indicated below to the following:

| | |
|---|---|
| Heather Patricco | ____ US Mail |
| Assistant US Attorney | _X__ CM/ECF Filing |
| Office of the United States Attorney | ____ Email Transmission |
| Washington Group Plaza, IV | ____ Hand Delivery |
| 800 Park Blvd., Ste. 600 | ____ Facsimile No. |
| Boise, ID 83712 | ____ Email: heather.patricco@usdoj.gov |

*/s/ Jennifer Hill*
WHITE PETERSON

W:\Work\C\Criminal Justice Act 25109\Robbertse, Chantelle C 18-CR-00281-EJL .008\Pleadings\Sentencing Memorandum Robbertse.doc

SENTENCING MEMORANDUM - 7